IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE TRUSTEES OF THE | : | CIVIL ACTION |
| UNIVERSITY OF PENNSYLVANIA | : | |
| | : | |
| v. | : | |
| | : | |
| TEAMSTER UNION LOCAL 115 | : | NO. 11-4674 |

# MEMORANDUM AND ORDER

Plaintiff in this action, the Trustees of the University of Pennsylvania ("University") filed this action against Defendant Teamsters Union Local 115 ("Local 115") seeking to vacate an arbitration award issued pursuant to a collective bargaining agreement between the parties. Currently before the Court are the Joint Stipulation and Record submitted by the parties (Doc. 21), the University's Motion for Summary Judgment (Doc. 22), Local 115's Cross-Motion for Summary Judgment (Doc. 23), the University's Response papers (Doc. 24), and Local 115's Response papers (Doc. 25). Oral argument was held on February 24, 2012. For the reasons stated below, the court will grant summary judgment in favor of the Defendant and affirm the arbitration award.

I.     BACKGROUND

The facts in this matter are undisputed. Local 115 is a labor organization representing approximately 600 employees at the University, seven of whom are bus drivers employed within the University's Division of Business Services, Department of Parking and Transportation, and the remaining are housekeepers employed in the University's Division of Facilities and Real Estate Services. (Joint Stipulation and Record ("J.A.") ¶ 2.) The University and Local 115 are

parities to a collective bargaining agreement governing the period at issue (the "Agreement"). (J.A. ¶ 3.) The Agreement contained several provisions relevant to this action. Article VI, "Non-Discrimination," provided, in relevant part, that there can be no discrimination by either party based on union membership or union activity. (J.A. Ex. A at 3.) Article XXVI, "Miscellaneous," provided, in relevant part, that the parties agree not to act arbitrarily or capriciously with respect to the Agreement. (J.A. Ex. A at 20-21.) Finally, Article XXVII, "Maintenance of Standards," provided, in relevant part, that the parties will continue past practices that are not specifically memorialized in the Agreement. (J.A. Ex. A at 21.)

On February 10 and 11, 2010, the University was closed due to a major snowstorm. (J.A. ¶ 4.) Some housekeepers in the Local 115 bargaining unit reported for work on those days and were paid their regular rate. (J.A. ¶ 5.) Other housekeepers in the Local 115 bargaining unit did not report for work. In accordance with past practice between the parties with respect to emergency closure, those employees who had available sick, vacation, or personal time used that time and were paid for those days, and those employees who did not have available sick, vacation, or personal time were not paid for those days and were not disciplined for not reporting to work. (J.A. ¶ 6.) Seven drivers in the Local 115 bargaining unit, who were not part of the housekeepers business unit, were paid during the closure. (J.A. ¶ 17.) Members of another bargaining unit, Local 835, also received pay for February 10 and 11, even if they did not report to work due to inclement weather. (J.A. ¶ 18.)

The parties agree that, under the parties' past practice, Local 115 bargaining unit employees who do not work on days the University closes due to inclement weather are not paid, and are expected to use their own leave time if they do not report to work. (J.A. ¶ 13-14.)

2

Likewise, it was the parties' longstanding practice not to discipline those Local 115 bargaining unit employees who did not report during inclement weather and did not have remaining leave time. (J.A. ¶ 15.) The parties' understood that this practice would be extended to the February 10 and 11 closures. (J.A. ¶ 16.) It was also past practice not to provide paid time off for snow closures to members of Local 835. (J.A. ¶ 19.) The payment of the seven drivers in the Local 115 bargaining unit and the employees of Local 835 appears to have been an error made by relatively new members of management who were unfamiliar with the past practice. (J.A. Ex. F at 5.)

On March 15, 2010, Local 115 filed a grievance requesting that those housekeepers who did not come to work but used their available leave time during the February 10 and 11 closures have that time restored to their leave banks. The grievance also requested that those housekeepers who had no available leave time and were not paid during the closure be paid. (J.A. ¶ 7.) The University denied the grievance and the parties proceeded to arbitration, pursuant to the Agreement, before Arbitrator Marianne Schick. (J.A. ¶ 8-9.)

The Arbitrator framed the issue as follows:

> Did the Employer violate the collective bargaining agreement by not giving employees paid time off for the two days the University of Pennsylvania was closed on February 10-11, 2010?

The Arbitrator considered the Agreement, testimony from both sides, and exhibits offered by both parties. (J.A. Ex. F at 2.) Both parties were represented by counsel. The Arbitrator found that there existed a long standing policy, applied across various bargaining units, including Local 115 and Local 835, of not paying employees for "snow days." (Id. at 8.) She found that the payment of Local 835 employees and seven Local 115 drivers for the February 10 and 11

3

closures was the action of University managers who were unfamiliar with the past practice. (Id. at 9.) Therefore, she held that, for purposes of the "Maintenance of Standards" clause in Article XXVII of the Agreement, the deviation did not establish a new past practice. (Id. at 11.)

However, the Arbitrator determined that the deviation altered the past practice on the occasion in question, to the detriment of those Local 115 employees who were not paid. (Id. at 9.) She found that the deviation was "arbitrar[y] and capricious[]" in violation of Article XXVI of the Agreement. (Id.) She also found that the deviation constituted discrimination due to Union activity, in violation of Article VI of the Agreement, because the University, despite a uniform past practice across the Local 115 and Local 835 bargaining units, treated Local 835 more favorably in this instance. (Id. at 9-10.) Therefore, she ordered the University to pay those employees in the Local 115 unit who were not previously paid for the February 10 and 11 snow closure. (Id. at 11.)

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Levy v. Sterling Holding Co., 544 F.3d 493, 501 (3d Cir. 2008). Only a factual dispute that is both genuine and material will defeat a motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986). The moving party bears the initial burden to demonstrate that there are no facts on record that support the non-moving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party carries this burden, the non-moving party must then present

specific facts showing the existence of a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986). At the summary judgment stage, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-movant. See Matsushita, 475 U.S. at 587; Horsehead Indus., Inc. v. Paramount Communications, Inc., 258 F.3d 132, 140 (3d Cir. 2001).

  B.   **Review Of Arbitration Awards**

This court's authority to review the Arbitrator's award is exceedingly narrow. The Supreme Court has stated:

> Judicial review of a labor-arbitration decision pursuant to [a collective bargaining] agreement is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement. We recently reiterated that if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision. It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable.

Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001) (internal quotations and citation omitted). Thus, "[s]o long as the arbitration award has some support in the record, and the arbitrator has not manifestly disregarded the law, we will affirm the award." Eichleay Corp. v. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, 944 F.2d 1047, 1056 (3d Cir. 1991).

**III.   DISCUSSION**

The University urges this court to vacate the arbitration award on three legal grounds: (1) the award does not draw its essence from the collective bargaining agreement, (2) the Arbitrator exceeded her power by ordering an award not authorized by the Agreement, and (3)

the award constitutes a manifest disregard of the law.

The University bases all of these arguments on two errors it alleges the Arbitrator committed.  First, the University argues that the Agreement does not mandate that the University pay Local 115 employees who do not report to work during snow closures, and that past practice, which was specifically incorporated into the Agreement, held that employees would not be paid.  Thus, the University contends that the Arbitrator's award of pay to Local 115 employees for the February 10 and 11 closures was in error.  Second, the University argues that the Arbitrator's consideration of how the University treated other collective bargaining unit employees during the February 10 and 11 snow closure was in error.

The University's first argument goes to the merits of the issue in dispute.  Indeed, the University made this very argument during the arbitration, and it was considered and rejected by the Arbitrator.  This court may not reach the merits of the Arbitrator's decision.  Rather, it must affirm the Arbitrator's decision so long as the Arbitrator was applying the terms of the contract to arrive at her decision.  <u>Major League Baseball Players Ass'n</u>, 532 U.S. at 509.  Here, the Arbitrator's decision stemmed from the terms of the Agreement.  The Arbitrator considered the "Maintenance of Standards" clause in Article XXVII of the Agreement and determined that the parties' past practice of not paying Local 115 employees who do not report for work during snow closures was part of the Agreement.  However, she found that the University's inconsistent implementation of this past practice during the February 10 and 11 snow closures violated two other sections of the Agreement, Article XXVI's prohibition against arbitrary and capricious action, and Article VI's prohibition against disparate treatment of employees based on union status.  Whether the Arbitrator's decision was a correct application of the Agreement is not a

question for this court.  The Arbitrator clearly applied the terms of the Agreement to the facts before her in order to reach her decision.  Therefore, the court will affirm the award.

The Arbitrator's examination of the University's actions toward other collective bargaining unit employees during the February 10 and 11 snow closure does not change this analysis.  To support its argument that the Arbitrator's consideration of other bargaining units was improper, the University cites Pennsylvania Power Company v. Local Union No. 272 of the IBEW, 276 F.3d 174 (3d Cir. 2001).  In Pennsylvania Power, the court found that an arbitrator's award failed to draw its essence from the collective bargaining agreement because the arbitrator based his decision on a comparison of how the employer treated bargaining unit employees vis a vis supervisors.  276 F.3d at 179-81.  The present case is distinguishable.  The Pennsylvania Power court's analysis turned largely on the fact that the arbitrator considered the employer's actions toward supervisors.  "Because supervisors are not 'employees' under the [National Labor Relations Act] for purposes of collective bargaining," an employer's disparate treatment of union employees and supervisors "cannot possibly constitute discrimination between employees" under an anti-discrimination clause in a collective bargaining agreement.  Id. at 180.

In the present case, the Arbitrator considered the University's treatment of Local 115 employees relative to one another, and relative to other collective bargaining units operating on the University's campus.  Thus, the consideration of an employer's action toward supervisors, which was a central issue in Pennsylvania Power, is not present here.  Moreover, the Arbitrator specifically noted that the Agreement at issue contained no "zipper clause" limiting her interpretation of the contract to the four corners of the agreement.  (J.A. Ex. F at 10, n.12.)  Indeed, the Agreement's Maintenance of Standards clause specifically contemplated that the

Arbitrator would consider the University's past practice "not specifically set forth in this Agreement." (Id. at 3.)

Finally, the University's citation to Matteson v. Ryder System Inc., 99 F.3d 108 (3d Cir. 1996), is inapposite. In Matteson, the court held that an arbitrator could exceed her authority by deciding issues not submitted by the parties to the arbitration. Id. at 112-13. Importantly, the court stated, "the authority of the arbitrator is defined not simply by the collective bargaining agreement, *but is determined in large measure by the parties' submissions*." Id. at 112 (emphasis added). Here, both the University and Local 115 affirmatively placed before the arbitrator evidence regarding the University's treatment of other bargaining units' employees during the February 10 and 11 closures. Local 115 urged the Arbitrator to consider the treatment of Local 835 bargaining unit employees, and the University raised the decision of another arbitrator affirming the nonpayment of bargaining unit employees made up of the University's campus police. Thus, the Arbitrator did not go outside the bounds of the agreement or the parties submissions to reach her decision. On the contrary, she considered the submissions made by the parties and applied the terms of the Agreement to the issue presented by the parties. Therefore, this court will affirm the arbitration award.

An implementing Order follows.